**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| RICHARD S. PALMER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-0297 |
| | § | |
| CHICAGO TITLE INSURANCE COMPANY, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Richard and Silvana Palmer filed suit in state court on November 1, 2011 against Chicago Title Insurance Company (CTIC), PNC Bank, and William and Mayola Swain. It does not appear that the individual defendants were served in state court before the suit was timely removed. PNC Bank moved to dismiss, (Docket Entry No. 7), which this court granted, without prejudice and with leave to amend by August 17, 2012, (Docket Entry No. 17). The Palmers did not file an amended complaint. CTIC moved for summary judgment on March 29, 2013. (Docket Entry No. 27). The Palmers did not respond.

Based on the pleadings, the motion, the record, and the relevant law, this court grants the motion for summary judgment and dismisses the claims against CTIC with prejudice. The claims against PNC Bank have been previously dismissed without prejudice and with leave to amend; the failure to file an amended complaint leads to their dismissal with prejudice. The claims against the Swains are dismissed, without prejudice, because the Palmers did not prosecute those claims. An order of dismissal is separately entered.

The reasons for these rulings are explained below.

## I.     The Allegations in the Complaint

Richard Palmer and Silvana Palmer purchased the residential property at issue in Montgomery, Texas on June 1, 2006.  (Docket Entry No.1, Ex. A, Pl.'s 1st Am. Pet., at 1).  The land was purchased from codefendants William and Mayola Swain for $192,702.00.  (*Id.*).  The Palmers obtained a mortgage from National City Mortgage.  The loan was subsequently transferred to codefendant PNC Bank, allegedly without notice to the Palmers.  (*Id.* at 2).  CTIC provided title insurance.  (*Id.* at 4).  According to the Palmers, CTIC was also "retained to provide services that included escrow . . . and a title search" and "to issue a report on the status of the title to the land."  (*Id.*).  CTIC allegedly failed to disclose third-party mineral liens on the land before the closing.  (*Id.*).  "[A]t the hour of closing," however, CTIC "included in the numerous other documents for the plaintiffs to sign [a] document stating that there was a third party lien on the plaintiffs['] property."  (*Id.*).  According to the Palmers, it was not until they retained an attorney to assist with a foreclosure on their property in 2011 that they learned of the third-party mineral lien.  (*Id.* at 7).  They were "surprised and infuriated" because they would not have purchased the property if they had known about the liens.  (*Id.* at 8).

The Palmers filed suit in the 9th District Court of Montgomery County, Texas on November 1, 2011, asserting numerous claims against the defendants.  The claims against CTIC were for violations of the Texas Deceptive Trade Practices Act (DTPA) and the Texas Insurance Code, for negligence and negligence per se, and for breach of warranty.  The Palmers also asserted negligence-based claims against the Swains, (*id.* at 12), as well as claims based on negligent and fraudulent misrepresentation, deceptive trade practices, and breach of warranty to convey clear title, (*id.* at 14–15).

After this suit was removed and this court granted PNC Bank's motion to dismiss, CTIC moved for summary judgment.  (Docket Entry No. 27).  CTIC argued that limitations bars all the claims and that the claims against CTIC also fail on the merits.  The Palmers did not file a response.

## II.    Summary Judgment

"Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting FED. R. CIV. P. 56(a)).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'"  *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Under Rule 56, a party moving for summary judgment "bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) (alteration in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).  Parties moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but 'need not negate the elements of the nonmovant's case.'"  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (emphasis omitted) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)) (internal quotation marks omitted); *see also Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).  If the moving parties fail to meet their initial burden, the motion for summary judgment must be denied, regardless of the nonmovants' response.  *See Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001); *Little*, 37 F.3d at1075.

When the moving parties have met their Rule 56 burden, the nonmoving parties cannot merely rest on the allegations in their pleadings. *See Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349–50 (5th Cir. 2005); *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). Rather, they are required to "'go beyond the pleadings'" and produce probative evidence to show that there is a genuine fact dispute for trial. *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075); *see also Kee*, 80 F.3d at 1047 ("Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."). If they do so, their evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Hillman*, 697 F.3d at 302; *Taita Chem. Co.*, 246 F.3d at 385. If the nonmovants fail to respond appropriately, or if they fail to respond at all, summary judgment is not awarded to the moving parties simply by default. *See Ford–Evans v. Smith*, 206 F. App'x 332, 334 (5th Cir. 2006); *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (quoting *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)); *John v. Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). Summary judgment is appropriate only if the moving parties have demonstrated the absence of a genuine dispute of material fact, and shown that judgment is warranted as a matter of law. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163 (5th Cir. 2006).

## III.    Analysis

### A.    Limitations

Texas law governs the limitations period for each of the claims. *See Kansa Reinsurance Co. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1369 (5th Cir. 1994). The Palmers admit that

the liens were disclosed in the documents they received at the closing on June 1, 2006.  (Docket Entry No. 1, Ex. A, at 4).  Under Texas law, "parties to an arms-length transaction are charged with a duty to read what they sign, and the failure to do so constitutes negligence."  *Salinas v. Beaudrie*, 960 S.W.2d 314, 320 (Tex. App.—Corpus Christi 1997, no pet.) (quoting *Plains Cotton Co-op. Ass'n v. Wolf*, 553 S.W.2d 800, 803 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.)).  The Palmers were presumed to know the information in the document they signed.

The discovery rule does not extend the statute of limitations deadline.  Under the discovery rule, a claim does not accrue and the limitations period does not begin "until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action."  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (citations omitted).  The discovery rule is "a very limited exception to the statute of limitations."  *Id.*  "[T]he discovery rule defers accrual of a cause of action if (1) the nature of the injury incurred is inherently undiscoverable and (2) the evidence of injury is objectively verifiable."  *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citing *Altai*, 918 S.W.2d at 456; *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996)).  "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence."  *Wagner & Brown, Ltd. v. Horwood*, 58 S.W. 3d 732, 734–35 (Tex. 2001).   Whether the plaintiff's general type of injury is inherently undiscoverable is determined on a categorical basis.  *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001).  The injury at issue here — arising from the third-party liens — was not "inherently undiscoverable" when the Palmers agreed to the loan.  *See, e.g.*, *FDSTO, Inc. v. Blakeslee*, 2001 WL 617825, at *4 (Tex. App.—Austin June 7, 2001, no pet.).  That the Palmers did not actually read the disclosures until 2011 does not justify tolling limitations.

5

Because the claims accrued in 2006, they are time-barred.  Under TEX. BUS. & COM. CODE ANN. § 17.565 (West 2011), "[a]ll actions brought under [the DTPA] must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."  The closing took place on June 1, 2006.  The Palmers filed suit in state court on November 1, 2011, nearly five and a half years later.  The Palmers have not and could not have made the argument that the limitations period should be tolled or that the two-year period does not otherwise apply to their DTPA claim.  The Palmers' DTPA claim is time-barred and CTIC is entitled to summary judgment dismissing it.

The Palmers' fraud claim is also time-barred.  Under TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (West 2002), claims for fraud must be brought within four years after the claim accrued.  The claim accrued on the date of closing, June 1, 2006, and is also time-barred.  CTIC is entitled to summary judgment dismissing the Palmers' fraud claim.

The Palmers' negligence-based claims were also filed too late.  Texas law provides a two-year limitations period for negligence.  TEX. CIV. PRAC. REM. CODE ANN. § 16.003(a) (West 2002).  The Palmers filed suit well outside this two-year period.  These claims fail as a matter of law and CTIC is entitled to summary judgment.

Finally, the Palmers' Insurance Code claims are time-barred.  These claims are also governed by a two-year statute of limitations.  TEX. INS. CODE ANN. § 541.162 (West 2009).  CTIC is entitled to summary judgment dismissing the Insurance Code claims.

CTIC is entitled to summary judgment on the Palmers' claims under the DTPA, for fraud,

6

for negligence, and under the Texas Insurance Code based on limitations.[1]  Even if the Palmers'

claims were timely, each claim would also fail as a matter of law, for the reasons explained below.

### B.       Breach of Warranty

The Palmers asserted a breach of warranty claim against CTIC for a failure to convey clear

title.  The elements of such a claim are that the title has failed and that the plaintiff has suffered

actual or constructive eviction.  *See Solares v. Solares*, 232 S.W.3d 873, 879 (Tex. App.—Dallas

2007, no pet.).  The summary judgment record does not include any evidence that CTIC conveyed

property to the Palmers.  The undisputed evidence is that the Swains owned the property and

conveyed it to the Palmers.  (Docket Entry No. 1, Ex. A, at 3).   Nor have the Palmers submitted or

identified any evidence that they were constructively or actually evicted from the property.  (*See id.*

at 1).  Because CTIC did not convey any title to the Palmers and because they have not been evicted,

CTIC is entitled to summary judgment dismissing the Palmers' breach of warranty claim.[2]

### C.       DTPA

The elements of a DTPA claim are "(1) the plaintiff is a consumer; (2) the defendant engaged

in false, misleading or deceptive acts; and (3) these acts constituted a producing cause of the

consumer's damages."  *Hugh Symons Grp. v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002); *see*

---

[1]  The Palmers' breach of warranty of title claim is subject to a four-year limitations period.  *Solares v. Solares*, 232 S.W.3d 873, 879 (Tex. App.—Dallas 2007, no pet.) (citing *Morrison v. Howard*, 261 S.W.2d 910, 912 (Tex. Civ. App.—Austin 1953, writ ref'd n.r.e.); TEX. CIV. PRAC. REM. CODE ANN. § 16.051 (West 2008) (providing a residual four-year limitations period when there is no express statute)).  The claim accrues and limitations begin running on the date of the breach.  *Solares*, 232 S.W.3d at 879.  Breach occurs once there has been an eviction or a constructive eviction.  *Id.*  Because the Palmers did not allege or present evidence of an actual or constructive eviction, limitations have not begun to run.  The claim is not ripe and must be dismissed for the reasons discussed below.

[2]  The Palmers also asserted a breach of warranty claim against the Swains.  That claim fails as a matter of law and must be dismissed because the Palmers have not alleged or shown that title failed and that the Palmers suffered actual or constructive eviction.

7

*also Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).  The Palmers allege that CTIC violated the DTPA in providing a title search.  (Docket Entry No. 1, Ex. A, at 14).  The Palmers have not identified or submitted record evidence tending to support their assertion that CTIC provided more than title insurance.  There is no record evidence that CTIC was acting as a title abstractor.  The DTPA claim based on the assertion that CTIC provided such services cannot survive.  CTIC is entitled to summary judgment on the DTPA claim.

### D.    Negligence

The Palmers assert that CTIC was negligent for failing to disclose the third-party mineral interest liens.  CTIC argues that, as a title insurer, it had no legal duty to discover or disclose such liens and, even if it did have such a duty, it was discharged when the liens were disclosed in the closing documents.  Because the uncontroverted record evidence is that CTIC did not have the duties of a title abstractor and that the liens were disclosed at closing, there is no breach of any duty owed to the Palmers relating to the third-party liens.  CTIC is entitled to summary judgment dismissing the negligence claim.

### E.    Negligence Per Se

"Negligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person."  *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979).  "To establish that a defendant's violation of a statute or regulation is negligence per se, a plaintiff must prove 'th[e] violation of a statute which is intended to protect the class of persons to which the plaintiff belongs against the risk of the type of harm which has in fact occurred.'"  *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 709–10 (5th Cir. Unit A Oct. 1981) (quoting *Marshall v. Isthmian Lines, Inc.*,

334 F.2d 131, 134 (5th Cir. 1964)).  The Palmers claim "negligence pro [sic] se" by CTIC but do not allege that CTIC violated a statute that dictated a standard of conduct.  (*See* Docket Entry No. 1, Ex. A, at 12–13).  CTIC pointed out this failure to identify a statutory basis for the claim in the motion for summary judgment, (Docket Entry No. 27, at 5).  The Palmers have not responded to identify the statute they rely on.  CTIC is entitled to summary judgment dismissing this claim.

### F.      Texas Insurance Code Violations

The Palmers claim that CTIC violated section 541.053 of the Texas Insurance Code by misrepresenting the services the Palmers would receive.  (Docket Entry No. 1, Ex. A, at 17).  That section makes it "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to directly or indirectly make . . . a statement that is false, maliciously critical of, or derogatory to the financial condition of an insurer; and is calculated to injure *a person engaged in the business of insurance*." TEX. INS. CODE ANN. § 541.053 (West 2009) (emphasis added).  The statute applies to those in the business of insurance; the Palmers are not.

In its motion for summary judgment, CTIC points out that the Palmers likely meant to assert a claim under section 542.003.  The Palmers referred to Article 21.55, which was repealed in 2005.  Article 21.55 covered the prompt payment of claims, which section 542.003 now addresses. *Compare* TEX. INS. CODE ANN. art. 21.55 (2003) (repealed 2005), *with* TEX. INS. CODE ANN. § 542.003 (West 2009).  Section 542.003 identifies unfair claim-settlement practices.  But that section does not apply here because the Palmers do not allege that they filed a claim under the title insurance policy CTIC issued.  CTIC is entitled to summary judgment dismissing the Palmers' Insurance Code claims.

### G.      Fraud

The Palmers allege that CTIC fraudulently misrepresented that the land the Palmers purchased had clear title. Under Texas common law, "[t]he issuance of a title policy does not create a representation regarding the status of the property's title; rather, it comprises an agreement to indemnify the insured against losses caused by defects in the title." *Solano v. Landamerica Commonwealth Title of Fort Worth, Inc.*, 2008 WL 5115294, at *8 (Tex. App.—Fort Worth Dec. 4, 2008, no pet.) (citing *Chicago Title Ins. Co. v. McDaniel*, 875 S.W.2d 310, 311 (Tex. 1994)). Issuing the title insurance policy to the Palmers was not a representation that the property had clear title. Additionally, "the party claiming fraud has a duty to use reasonable diligence in protecting his own affairs." *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962). This includes a duty to read documents that the party signs. *Salinas*, 960 S.W.2d at 320. The record evidence that the closing documents disclosed the mineral liens is uncontradicted. There is no actionable misrepresentation apparent from the present record. CTIC is entitled to summary judgment dismissing the fraud claim.

## IV.   Conclusion

CTIC's motion for summary judgment is granted. The claims against PNC Bank were previously dismissed. The claims against both these defendants are now dismissed with prejudice. The claims against the Swains are dismissed, without prejudice, for failure to prosecute. An order of dismissal is separately entered.

SIGNED on June 17, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge